UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SCOTT TUCKER,

    Defendant.
    _____/

File No. 1:09-CR-57

HON. ROBERT HOLMES BELL

## OPINION

On February 25, 2009, a federal grand jury indicted Defendant on four counts of violating the National Emissions Standards for Hazardous Pollutants ("NESHAP"), which govern the handling and disposal of asbestos, and three counts of violating the Toxic Substances Control Act ("TSCA"), which governs the handling and disposal of polychlorinated biphenyls ("PCBs"). (Dkt. No. 1.) Defendant has filed this motion in limine to prevent the United States from introducing certain evidence in connection with these charges. (Dkt. No. 36.)

**I. Factual Background**

Defendant Scott Tucker is the president and owner of H & M Demolition. In January of 2005, H & M Demolition was hired to demolish a kiln-drying building at VKW Hardwoods in Wyoming, Michigan (the "VKW site"). The roof panels covering the kiln-drying building contained asbestos. In April of 2005, H & M Demolition was hired to

demolish a General Electric plant located in Holland, Michigan (the "GE site"). Oil inside of electric transformers and capacitors at the GE site contained PCBs. The charges against Defendant stem from Defendant's handling and disposal of the asbestos and PCBs at the VKW and GE job sites.

Following the demolition of the kiln-drying facility, the United States gathered samples of the roof panels for testing. All of the samples appear to have been taken from the debris surrounding the work site. The samples were not directly removed from the roof itself. Although all of the samples have been discarded, destroyed, or lost since they were first collected in 2005, the United States expects to introduce evidence of the samples and the results of the laboratory tests conducted on them.

Defendant has filed this motion in limine to prevent the United States from introducing four categories of evidence: (1) evidence pertaining to material samples taken from the VKW work site; (2) evidence of Defendant's prior environmental regulation violations; (3) evidence of Defendant's two past criminal convictions; and (4) other miscellaneous pieces of evidence.[1] During the December 1, 2009, hearing on the outstanding motions, the Court granted Defendant's motion to exclude evidence of Defendant's prior

---

[1] In addition to the miscellaneous pieces of evidence discussed herein, Defendant's motion also sought to exclude evidence that Defendant has illegal debris buried on his property, that Defendant keeps a loaded gun, that there is a leg bone buried in Defendant's yard, that Defendant does not care about his employees, and that Defendant has been married three times. In its response brief, the government indicated that it does not intend to offer this evidence as part of its case-in-chief. Thus, the Court will deny Defendant's motion to exclude these categories of evidence as moot.

violations of environmental and work practice (MIOSHA) regulations, as well as evidence of Defendant's two past criminal convictions. Thus, this opinion addresses the admissibility of evidence pertaining to asbestos samples taken from the VKW site and other miscellaneous pieces of evidence that are the subject of Defendant's motion.

### III. Law and Analysis

*1. Evidence of material samples taken from the VKW site*

The NESHAP regulations apply only to "regulated asbestos-containing material" (RACM). *See* 40 C.F.R. § 61.145(a). A material qualifies as RACM only if it contains more than 1% asbestos. *See* 40 C.F.R. § 61.141. To determine whether a material contains over 1% asbestos, analysts are instructed to use the Polarized Light Microscopy ("PLM") method set forth in 40 C.F.R. § 763, Subpt. E, App'x E § 1. 40 C.F.R. § 61.141. The PLM method permits analysts to assess the asbestos content of a material by examining only a sample of the material. *See* 40 C.F.R. § 763 Subpt. E, App'x E.

Defendant seeks to exclude evidence of the government's samples and the related test results on two grounds: (1) that the samples are not "representative" of the asbestos content of the roof panels of the kiln-drying building, and (2) that the government failed to follow the procedures required by the NESHAP regulations in performing tests on the samples.

A. Whether the samples are "representative"

The United States first argues that the PLM method does not require that a material sample gathered for testing be representative of the material as a whole. However, the

regulations provide that "[i]f there are any questions about the representative nature of the sample, another sample should be requested before proceeding with the [PLM] analysis." 40 C.F.R. § 763 Subpart E, App'x E § 1.7.1. Additionally, because the regulations only apply to relatively large quantities of RACM, *see* 40 C.F.R. 61.145(a)(1), it is important that samples used for testing which in themselves would be too small for regulation are reflective of the characteristics, including asbestos count, of the material as a whole. *See* 40 C.F.R. § 61.145(a).

Defendant relies on *United States v. San Diego Gas & Electric Company* ("*SDG&E*"), No. 06cr0065 DMS, 07cr0484 (S.D. Cal. Aug. 31, 2009) to argue that the samples of the roof panel material tested by the United States were not representative of the roof panels as a whole. In *SDG&E*, the defendants were charged with violating various NESHAP provisions. The charges stemmed from the defendants' removal of an underground pipeline that was wrapped in coal tar insulation. The coal tar insulation was made up of multiple layers of material, one or more of which contained asbestos. Some of the samples of the insulation tested by the United States were not removed from the insulation itself but were taken from the debris surrounding the area in which the pipe was located. The court concluded that debris samples that did not include all the layers of the multi-layered material were not "representative" of the material and thus were not admissible to prove that the material contained over 1% asbestos. *Id.* at 8-11. In support of this conclusion, the court noted that, under the EPA regulations, the asbestos content of a multi-layered material is calculated by

averaging the asbestos content of each individual layer. *Id.* at 4, 5 n.3 (citing 40 C.F.R. § 763, Subpt. E, App'x E § 1.7.2.1). Because debris samples that do not contain every layer of a multilayer material cannot possibly apprise analysts of the asbestos content of the missing layers, those debris samples do not provide enough information to properly calculate the total asbestos content of the multi-layer material under the averaging test, and they are therefore not representative of the material as a whole. Defendant argues that, because all of the samples tested by the government in this case were taken from debris rather than directly removed from the roofing panels themselves, the samples are not representative and are therefore inadmissible.

Defendant's argument, however, fails to account for the fact that the roofing panels involved in this case were comprised of single-layer, homogenous material. The EPA acknowledges that there is a difference between single-layer and multilayer material by advising that "[i]f a material is homogenous, it will generally have a uniform composition throughout. In this case, any sample increment can be considered representative of the material." EPA, Gen. Field Sampling Guidelines § 4.0 (1994). Although the *SDG&E* court was correct to express concern that a debris sample might not contain all layers of a multilayered material, and thus not provide enough information to calculate the asbestos content of the material as a whole under the averaging method, the averaging method is not used to determine the asbestos content of single-layer material and so there is no concern that the asbestos content of a sample will not accurately reflect the asbestos content of the

5

material as a whole simply because the sample is taken from debris. *See, e.g.*, *SDG&E*, No. 06cr0065 DMS, at *5 n.4 (suggesting that the holding does not extend to whether a debris sample of a homogenous material is representative of the material as a whole).

There is no evidence that the debris samples tested by the government are not representative of the roof panel material as a whole. Evidence of the samples and the tests should not be excluded on this basis.

B. Whether the government failed to properly test the samples

The asbestos regulations require that a material's asbestos content be determined by using the PLM method. 40 C.F.R. § 61.141. The PLM method is a highly-technical, highly-detailed, multi-step process for testing asbestos-containing material. 40 C.F.R. § 763 Subpt. E, App'x E. Defendant argues that, in testing the roof panel samples, the United States did not precisely comply with the stringent requirements of the PLM method, and for this reason evidence of the samples and test results should be excluded. The United States argues that non-compliance with the PLM method goes to the weight of the evidence, not its admissibility. The United States relies primarily on "Credible Evidence Rule," which states that:

> For the purposes of . . . establishing whether or not a person has violated or is in violation of [NESHAP], nothing in [NESHAP] shall preclude the use, including the exclusive use, of any credible evidence or information, relevant to whether a source would have been in compliance with applicable requirements if the appropriate performance or compliance test had been performed.

40 C.F.R. § 61.12(e); *see also United States v. Self*, 2 F.3d 1071, 1086 (10th Cir. 1993)

6

("While an EPA-approved test of the material would have been persuasive evidence as to whether the material was hazardous waste, the government was not required to prove this element through test data. . . . [T]he absence of reliable test data and presence of some conflicting evidence in the record does not render the government's proof insufficient as a matter of law."); *United States v. WCI Steel*, 72 F. Supp. 2d 810, 824 (N.D. Ohio 1999) ("[F]ailure to rigidly adhere to [a test method prescribed by the EPA] does not render the sampling evidence inadmissible."). Thus, according to the Credible Evidence Rule, which has been incorporated in the NESHAP, strict compliance with the testing methods prescribed by the NESHAP, including the PLM method, is not necessary as long as the testing methods actually used provide results that are both relevant and credible.

The government's test results are clearly relevant to prove whether the asbestos content of the roof panel material was over 1%. Further, there is no evidence that the test results are not credible and, to the extent Defendant believes that they are, he is free to challenge them during trial. The government is not required to prove the asbestos content of the roof panels using the PLM method exclusively, and evidence of the samples and the test results should not be excluded on this basis.

*2. Miscellaneous*

Defendant seeks to exclude the following pieces of evidence on the grounds that: (1) they are not relevant; (2) they constitute impermissible character evidence; and (3) their probative value is substantially outweighed by the danger of unfair prejudice.

A. Evidence that Defendant thinks asbestos regulations are a joke

This evidence is relevant. The United States must demonstrate that Defendant violated certain regulations governing the disposal of asbestos. Evidence that Defendant thinks that asbestos regulations are a joke increases the likelihood that he would knowingly violate them. Additionally, this evidence does not constitute impermissible character evidence. Defendant's tendency to take asbestos regulations seriously is more appropriately classified as a point of view rather than a trait of his character, and Rule 404 does not bar evidence of a party's point of view. Finally, this evidence is not unfairly prejudicial, as required by Rule 403. As discussed above, it is highly probative of whether Defendant would knowingly violate the asbestos regulations, and it does not create a concern that the jury will convict for reasons unrelated to the present charges or complicate the issues.

B. Evidence that Defendant intimidated, threatened, and used physical violence against H & M employees and witnesses in this case

To the extent this evidence will be used to prove Defendant's consciousness of guilt, it is relevant non-character evidence. *See United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). However, evidence of intimidation and threats may be substantially more prejudicial than probative under Rule 403, although this is a difficult determination to make ex ante. Thus, the Court will admit evidence that Defendant intimidated, threatened, and used physical violence against H & M employees and witnesses to prove that Defendant was aware that he was engaging in illegal activity, but reserve the right to exclude the evidence under Rule 403 if it appears to be more unfairly prejudicial to Defendant than probative of consciousness of guilt.

C. Evidence that Defendant did not pay his employees

The United States suggests no relevant purpose for which to offer this evidence. It is therefore not admissible.

## IV. Conclusion

Evidence of asbestos samples taken from the VKW work site and tests conducted on those samples is admissible even though the samples were taken from the debris of the roof panels and the PLM method was not followed with precision in testing the samples. Evidence of Defendant's attitude toward asbestos regulations and evidence of threats, intimidation, and physical violence used by Defendant are admissible, but evidence that Defendant did not pay his employees is not.

An order consistent with this opinion will be entered.


Dated: December 9, 2009                  /s/ Robert Holmes Bell
                                                                       ROBERT HOLMES BELL
                                                                       UNITED STATES DISTRICT JUDGE